***********
The undersigned reviewed the prior Amended Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Hall. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms and modifies the Opinion and Award by Deputy Commissioner Hall.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission had jurisdiction over the subject matter of this case, the parties were properly before the Full Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The employee-employer relationship existed between the parties at all relevant times.
3. The average weekly wage will be determined from a Form 22 to be submitted by Defendants at the hearing. Plaintiff contended that his average weekly wage was approximately $446.70.
4. Plaintiff was pursuing a claim for a left shoulder rotator cuff tear injury that he alleged arose out of an accident in the course and scope of his employment, in which Defendants have denied compensability.
5. The issues before the Full Commission are:
(a) Whether Plaintiff's injury is permanently and totally disabling, and if so, is he entitled to life-long benefits even though he may have a rated injury;
(b) What medical expenses should be paid or reimbursed by Defendants as a result of Plaintiff's work-related injury;
(c) What amount of permanent partial disability benefits is Plaintiff entitled as a result of a 17 percent permanent partial impairment rating to his left arm;
(d) Whether Plaintiff is entitled to temporary partial disability benefits in lieu of permanent partial disability benefits, and if so, in what amount;
6. Defendants contend the issues to be heard are:
(a) Whether Plaintiff injured his left shoulder by accident arising out of and in the course of his employment on or about November 15, 2000 or November 20, 2000;
(b) If so, to what benefits is the Plaintiff entitled.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was sixty-one years old and had completed the eleventh grade. Plaintiff subsequently received his GED and a degree in ministry from Roanoke Bible College. At the time of the hearing before the Deputy Commissioner, Plaintiff served as minister of Sweet Home Church in Bear Grass, North Carolina. Plaintiff was not compensated for his work as a minister.
2. Plaintiff worked with Defendant from October 2, 2000 through November 22, 2000. Plaintiff had worked for Hamilton Beach/Proctor Silex and Stanadyne Diesel prior to working with Defendant.
3. Plaintiff testified, at the hearing before the Deputy Commissioner, that when he went to work for Defendant, it was his belief that he was being hired as a supervisor. However, Plaintiff worked under the supervision of Willie Edmundson doing final assembly work at the rate of $11.00 per hour. Plaintiff's job was to assemble prefabricated pieces of wood products.
4. On November 20, 2000, Plaintiff was cleaning up his area and stacking wood pallets. The next to the last pallet to be stacked was made out of oak and was very heavy compared to the other pallets. Plaintiff's supervisor testified that they did have some oak pallets around the work area. As Plaintiff was trying to push the pallet up onto the stack, he hit his head on the metal storage rack. This caused him to let go of the pallet with his right hand, but he held on with his left hand as he fell back until his knees hit the floor. Plaintiff was dazed and was bleeding from his forehead. Plaintiff's supervisor testified that when he went to check on Plaintiff, after another employee reported the incident with Plaintiff to him, he still had a raised area on his forehead.
5. Plaintiff's supervisor filled out an accident report. Plaintiff said he stayed at work for a couple more hours until it was time to go home. Plaintiff had a bad headache and dizziness that evening at home. Plaintiff testified that he did not report his shoulder being sore at that time. Plaintiff worked the next day with a headache and soreness across the back of his neck and left shoulder and said he mentioned it to some of his coworkers. Plaintiff testified that he told his supervisor on November 22, 2000 that his head hurt and he was sore across the back of his neck and left shoulder. Plaintiff's supervisor stated he did not recall Plaintiff telling him that and it was not put in any written report.
6. Plaintiff called in on the following Monday to report that he was not coming to work. Plaintiff said he spoke to a young man in Defendants' office, but he did not know with whom he spoke. Plaintiff's supervisor said he never got the message and thought Plaintiff was not returning to work because he was unhappy that he never got a supervisor position or the money he said he had been promised.
7. Plaintiff did not work the week following Thanksgiving due to shoulder pain. Plaintiff saw his family physician, Dr. Moore, on December 1, 2000 and it was noted that Plaintiff had 10 percent range of motion in his left shoulder. Dr. Moore referred Plaintiff to Dr. George Miller, and orthopaedic surgeon. Plaintiff sought treatment with Dr. Miller on December 1, 2000 and Dr. Miller ordered an MRI, injected Plaintiff's shoulder, and kept him out of work. The MRI was completed on December 11, 2000.
8. Plaintiff saw Dr. Miller on December 13, 2000 to review the MRI, which revealed a tear of the rotator cuff. Dr. Miller discussed surgery with Plaintiff and Plaintiff returned to Dr. Miller on January 23, 2001 for a preoperative evaluation. Surgery to repair the left rotator cuff was scheduled for January 29, 2001.
9. Dr. Miller found two of four tendons to be torn and surgically repaired them. Dr. Miller prescribed physical therapy from January 31, 2001 until July 13, 2001 when it was discontinued.
10. On May 4, 2001, Plaintiff returned to Dr. Miller. Dr Miller noted Plaintiff was not ready for full and unrestricted work. He further noted that Plaintiff might be capable of light duty work with no lifting over five pounds with his left arm. There is no evidence in the record that Defendants offered Plaintiff any light duty or sedentary work or made adequate attempts to return Plaintiff to work.
11. Dr. Miller found Plaintiff to be at maximum medical improvement on July 6, 2001. Plaintiff continued to have weakness in the shoulder and lacked full range of motion. Dr. Miller said Plaintiff was capable of light duty with no overhead work as a permanent restriction and no repetitive lifting over three pounds. Dr. Miller assigned a 17 percent impairment rating to Plaintiff's left upper extremity.
12. In an April 19, 2002 letter and in his deposition, Dr. Miller said that the incident where Plaintiff hit his head and fell to the floor while still holding on to the pallet with his left hand could have caused the rotator cuff tear. Dr. Miller said it would be unusual for a person with that type of injury not to have pain and weakness immediately accompanying the tear but a head injury, and the degree of that head injury, could change that. Plaintiff had pain and soreness in his left shoulder on November 21, 2000, which was the day he told his coworkers of his injury, and on November 22, 2000, when he verbally told his supervisor that his neck and left shoulder were bothering him.
13. In his recorded statement of January 2, 2001, Plaintiff, when asked what he felt in his shoulder, responded, "Well, my head hurt so much, I didn't feel anything that day." He went on to say, "I didn't feel any soreness until the next day. It began to get sore. But the pain really didn't hit me until I was off that weekend." Plaintiff was also asked if he called Defendant the following Monday, which would have been November 27, 2000, and told them anything. Plaintiff responded that he left a message with a man and "It basically said that I was having some, a great deal of discomfort in my left arm, in the shoulder area. And I was trying to get to my family doctor so I could see him." Plaintiff also told the interviewer that he had never had problems with his left shoulder.
14. There is no evidence to suggest there was any incident, other than the incident at work, that would have caused Plaintiff's left rotator cuff tear.
15. The medical treatment Plaintiff received was reasonable and causally related to Plaintiff's injury by accident that is the subject of this claim.
16. Plaintiff's supervisor testified that Plaintiff was a good employee who was timely and did a good job. Bennie Davis, Jr. testified that Plaintiff was a fellow member of the Downeast search and rescue team and that Plaintiff had to stay in "head shed" and act as public information officer due to his shoulder problem, which kept him out of the field. He went on to testify to Plaintiff's outstanding character. Sue Davis also testified to Plaintiff's outstanding leadership in the church and that Plaintiff had not been able to play the guitar during church services due to his shoulder injury. The undersigned find Plaintiff's testimony to be credible.
17. Plaintiff sustained an injury by accident during the course and scope of his employment with Defendant that resulted in a head and shoulder injury.
18. Plaintiff contends he is permanently and totally disabled. Plaintiff has not proven that he is permanent and totally disabled and has put forth no evidence of any job searches or efforts to return to gainful employment within his restrictions. Plaintiff contends he was hired initially by Defendant as a supervisor, which would lead to the reasonable inference that Plaintiff may be capable of working in some type of supervisory position that is within his permanent restrictions.
19. Based on the Form 22 submitted in this matter, Plaintiff's average weekly wage is $456.12, yielding a compensation rate of $304.10.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On November 20, 2000, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendants. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has been totally disabled from working as a result of the November 20, 2000 injury by accident since December 1, 2000, when he was taken out of work by Dr. Miller, and continuing to the present. N.C. Gen. Stat. § 97-29.
3. Plaintiff's average weekly wage, based on the Form 22 submitted in this matter, is $456.12, yielding a compensation rate of $304.10. N.C. Gen. Stat. § 97-2(5).
4. Plaintiff's medical treatment was reasonably required to affect a cure of, provide relief from, or lessen the period of disability related to his compensable injury. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay Plaintiff temporary total disability compensation, at $304.10 per week, from December 1, 2000 and continuing until plaintiff returns to work or until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum subject to attorney fees hereinafter provided.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of Plaintiff's compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability.
3. A reasonable attorney's fee of 25 percent of the compensation awarded to Plaintiff in paragraph 1 above is hereby approved to be deducted from the lump sum due Plaintiff and shall be paid directly to Plaintiff's counsel. Thereafter, every fourth check shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs.
This the 20th day of November, 2003.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER